UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

LAFAYETTE BONE & JOINT CLINIC, INC.

VERSUS

TRANSPORTATION INSURANCE CO.

CASE NO. 6:21-CV-00317

JUDGE JAMES D. CAIN, JR.

MAGISTRATE JUDGE CAROL B. WHITEHURST

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 8] filed under Federal Rule of Civil Procedure 12(b)(6) by defendant Transportation Insurance Company ("TIC"), in response to the breach of insurance contract suit brought by plaintiff Lafayette Bone and Joint Clinic, Inc. ("LBJC").[1] LBJC opposes the motion. Doc. 14.

## I.
### BACKGROUND

This suit arises from an insurance claim for loss of business income, as a result of the COVID-19 pandemic and related government shutdown orders. LBJC, a medical and surgical clinic located in Lafayette, Louisiana, had in effect a commercial property insurance policy with TIC, with a policy period from November 15, 2019, to November 15, 2020. Doc. 1, att. 2, pp. 2–3; doc. 8, att. 2. The insurance policy provides additional

---

[1] The parties were improperly identified, respectively, as "Transport Insurance Company" and "Louisiana Bone and Joint Clinic, LLC" in the initial pleadings.

coverage for loss of business income in the form of Business Income, Extra Expense, and Civil Authority Endorsements. *See* doc. 8, att. 2.

Due to the COVID-19 pandemic and resulting executive orders issued by Louisiana Governor John Bel Edwards, LBJC filed a claim for loss of business income under the policy. TIC denied the claim based on a lack of physical damage to the insured premises or any other relevant property. LBJC then filed a complaint in the 15th Judicial District Court, Lafayette Parish, Louisiana, raising a breach of contract claim and requesting declaratory judgment. *See* doc. 1, att. 2. TIC removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1.

TIC now brings this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), maintaining that the terms of the policy require (1) physical damage to trigger coverage under the business income and civil authority endorsements and (2) a government order prohibiting access to the location to trigger coverage under the civil authority endorsement. Doc. 8, att. 1. The COVID-19 pandemic and resulting executive orders do not meet these conditions, it asserts, and so LBJC's suit should be dismissed with prejudice. *Id.* LBJC opposes the motion, arguing that the terms of the policy are ambiguous and that its allegations point to physical loss of/damage to the insured premises through the potential presence of the virus there. Doc. 14.

## II.
## LAW & APPLICATION

### A. *Rule 12(b)(6) Standard*

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. *Application*

In a nutshell, TIC argues that LBJC's claims must be dismissed because LBJC has failed to allege that its losses were caused by "direct physical loss of or damage to" property at the locations insured under the policy. TIC maintains that this is a threshold requirement

under the Business Income and Extra Expense coverage provisions of the Policy. TIC further maintains that LBJC is not entitled to Civil Authority coverage because the petition does not plead either of the two prerequisites for such coverage: (i) that a governmental order was issued *because of direct physical loss of or damage* to other property, or (ii) that a government order *prohibited access* to the insured locations.

### 1. Business Income and Extra Expense coverage

LBJC alleges that the possible presence of coronavirus at its premises constitutes physical loss or damage, triggering coverage under the Business Income and Extra Expense endorsements. Doc. 1, att. 2, pp. 6–8. TIC maintains that LBJC has failed to identify what property located within the clinic was "lost" or "damaged" by the virus. Simply stated, if there is no physical loss to the insured property, there is no coverage.

Regarding the business income loss, the policy provides:

**Business Income**
. . . .
b. We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations' during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

Doc. 8, att. 2, p. 42. As for "Extra Expense," the policy provides that such coverage means:

reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

*Id.* at 44. Finally, the "period of restoration" is defined as "[beginning] with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises." *Id.* at 37.

LBJC argues that *physical loss* is distinct from physical damages so as to include loss of use of the insured property. LBJC suggests that when drafting the policy language, TIC should have used "and" for the word "or," but chose "or" to indicate the there is a distinction between the two separate acts which are "direct physical loss of" or "damage to," including non-physical damage. TIC emphasizes, however, the inclusion of the word "physical" in all relevant policy sections and argues that the plain meaning of the term is unambiguous, requiring some alteration of the structure to trigger coverage.

As the parties' briefs show, district courts have been divided on whether these terms are ambiguous and/or whether they encompass the damage inflicted by coronavirus exposure. *Compare, e.g.*, *Muriel's New Orleans, LLC v. State Farm Fire and Cas. Co.*, 2021 WL 1614812 (E.D. La. Apr. 26, 2021) (restaurant's business income and extra expense coverage was not triggered due to the COVID pandemic because "physical loss" required there to be some "distinct, demonstrable, physical alteration of the property") *with NeCo, Inc. v. Owners Ins. Co.*, __ F. Supp. 3d __, 2021 WL 601501 (W.D. Mo. 2021) (sporting goods store stated a claim for coverage under its business income and extra expense coverage, because potential presence of virus has rendered premises unsafe and unusable).

"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art.

2050. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* at art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Prejean v. Guillory*, 38 So.3d 274 (La. 2010).

This court finds no ambiguity in the requirement that the premises suffer a physical loss or damage (regardless of whether "physical" modifies just loss), or in its implications for coverage in this matter. As the Fifth Circuit has noted, "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006). It has also observed that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper." *Trinity Indus. Inc., v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990). To this end courts within the Fifth Circuit have required a "distinct, demonstrable, physical alteration of the property" to trigger coverage. *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020) (quoting *Hartford*, 181 F. App'x at 470). Accordingly, every district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement. *Id.*; *see also Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, __ F. Supp. 3d. __, 2021 WL 972878, at *5 (W.D. Tex. 2021). LBJC fails to advance any new

argument compelling the court to depart from this interpretation, and therefore cannot state a plausible claim for relief under the Business Income/Extra Expense endorsements.[2]

### 2. Civil Authority

LBJC argues that coronavirus exposure resulted in damage triggering coverage under the Civil Authority endorsement, through the resulting shut-down orders issued by Governor John Bel Edwards. TIC maintains that coverage is only triggered by physical damage as described above, and only applies in the face of government orders completely prohibiting access to the insured premises.

The policy provides, in pertinent part:

**CIVIL AUTHORITY**
1. When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

Doc. 8, att. 2, p. 68.

The order at issue here, 33 JBE 2020, exempted "non-elective" medical care and only prohibited certain types of businesses, **not** including healthcare facilities, from

---

[2] LBJC has cited heavily to *In re Chinese Manufactured Drywall Products Liability Litigation*, 759 F.Supp.2d 822 (E.D. La. 2010), where a judge of the Eastern District of Louisiana found that exposure to Chinese-manufactured drywall that rendered homes uninhabitable constituted physical damage triggering coverage under a homeowner's insurance policy. LBJC does not show, however, that the coronavirus, to the extent present in its building, rendered the premises uninhabitable. *See Terry Black's Barbecue*, 2020 WL 7351246, at *5 (noting that the virus does not threaten structures and can be removed with standard cleaning practices). Additionally, as TIC notes, *Chinese Drywall* applied specifically to homeowner's policies defining "loss of use of tangible property" as a covered loss. 759 F.Supp.2d at 832. That is not the case here, under the plain terms of the endorsements above. Finally, the court in *Chinese Drywall* distinguished the "deeply personal" interests at play in a homeowner's policy from the commercial interests involved in other types of insurance and declined to apply *Trinity*, supra. Here the policy involves only commercial interests.

opening. Doc. 8, att. 3, p. 9. TIC also shows that all of the governor's orders permitted essential procedures and access to facilities to perform those services. *See generally* doc. 8, att. 3. Nonetheless, LBJC alleges that it cancelled all appointments and fully closed as a result. Doc. 1, att. 2, p. 7.

The Fifth Circuit has held that the critical word is "prohibit," which means to "to forbid [access] by authority or command." *730 Bienville Partners, Ltd. v. Assurance Co. of Am.,* 67 F. App'x 248, 2003 WL 21145725 (5th Cir. 2003). The clause requires complete prohibition of access. See *Commstop v. Travelers Indem. Co. Conn.*, 2012 WL 1883461, at *10 (W.D. La. May 17, 2012). Despite LBJC's decision to close, the terms of the order did not mandate the decision and so the conditions were not met here. Additionally, as TIC observes, the executive orders were not issued due to direct physical loss of or damage to the property. The policy's Civil Authority endorsement only applies to civil authority orders issued "due to direct physical loss of or damage to property." Accordingly, LBJC has not alleged facts sufficient to show that any relevant order could trigger coverage under this endorsement.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 8] will be granted due to LBJC's inability to meet its *prima facie* burden of establishing coverage under the policy.

**THUS DONE AND SIGNED** in Chambers on this 3rd day of May, 2021.

*/s/ James D. Cain, Jr.*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**